# Harrisburg v. McPherran.

*Municipal lien—Front-foot rute—Constitutional law—Statutes.*

The Act of May 23, 1889, P. L. 277, which provides for the cost of paving streets in cities of the third class, under the front-foot rule is not unconstitutional in that it contains no provision for judicially determining the special benefits, or for notice to property owners of time and place when they can be heard as to the amount of special benefits before the assessment is made.

Prior to the decision in Norwood v. Baker, 172 U. S. 269, this could not be regarded as an open question in Pennsylvania and a careful study of that case and of the authorities therein cited by Mr. Justice HARLAN, in support of the judgment (many of which distinctly recognize the power of the legislature to adopt this mode of assessment under special circumstances, as, for example, when it is applied to the original paving of a strictly uniform width in the built up portions of a city or large town) fails to disclose that it established a general rule which controls that adopted by the Pennsylvania Supreme Court.

Argued Jan. 15, 1900.  Appeals, Nos. 18, 20 and 26, March T., 1900, by defendants in suits of the city of Harrisburg against George Miller and Samuel Hertzler, same against Margaret M. Funk and same against John P. McPherran, from judgments of C. P. Dauphin Co., March T., 1897, No. 225, Sept. T., 1894, No. 479, and Sept. T., 1894, No. 508, on verdicts for plaintiff. Before RICE, P. J., BEAVER, ORLADY, W. W. PORTER, W. D. PORTER and MITCHELL, JJ.  Affirmed.  Opinion by RICE, P. J.

Scire facias sur municipal lien.   Before SIMONTON, P. J.

The proceedings in the above cases were brought to recover assessments for paving in the city of Harrisburg, the cost thereof being assessed upon abutting properties under the front-foot rule.   The main contention in the court below was that the ordinance of the city under which the work was done, under the municipal Act of May 23, 1889, P. L. 277, were in violation of the 14th amendment of the constitution of the United States and of sections 9 and 10 of article 1, section 1 of article 9, and section 8 of article 15 of the constitution of Pennsylvania, in that they provided no method of finding the amount of benefits conferred upon abutting property by a street pavement, but arbitrarily place the whole cost of the pavement on the abutting properties according to the front-foot rule, without regard to the amount of special benefit.

In the suit of Harrisburg v. McPherran, defendant submitted the following points, the refusal of which was assigned for error:

[1. A property can only be legally assessed for the amount of special benefit accruing to it from a street improvement, and as the act of May 23, 1889, and the ordinance of the city under which these proceedings have been had, provide no method of finding the amount of special benefits conferred on abutting property by a street pavement, but arbitrarily place the whole cost of a pavement on the abutting properties, according to the front-foot rule without regard to the amount of special benefit, the act of assembly and ordinance are in violation of the 14th amendment of the constitution of the United States, and no recovery can be had in this case.  *Answer:* Refused.] [1]

[2. The assessment in this case is in violation of the 14th amendment of the constitution of the United States, because

there was no finding by any one of the amount of special benefit accruing to the abutting properties, and because the assessment was made solely for the cost and expense of the improvement and not on the basis of special benefits, and the verdict must be for the defendant.  *Answer:* Refused.] [2]

[3. A property can only be legally assessed for the amount of special benefit accruing to it from a street improvement, and as the act of May 23, 1889, and the ordinance of the city under which these proceedings have been had, provide no method of finding the amount of special benefits conferred on abutting property by a street pavement, but arbitrarily place the whole cost of a pavement on the abutting properties, according to the front-foot rule without regard to the amount of special benefit, the said act of assembly and ordinance are in violation of sections 9 and 10 of article 1, section 1 of article 9 and section 8 of article 16 of the constitution of Pennsylvania, and no recovery can be had in this case.  *Answer:* Refused.] [3]

[4. The assessment in this case is in violation of sections 9 and 10 of article 1, section 1 of article 9, and section 8 of article 16 of the constitution of Pennsylvania, because there was no finding by any one of the amount of special benefit accruing to the abutting properties, and because the assessment was made solely for the cost and expense of the improvement and not on the basis of special benefits, and the verdict must be for the defendant.  *Answer:* Refused.] [4]

[5. There having been an act of assembly, to wit: the Act of May 16, 1891, P. L. 75, in force at the time this paving was done in the year 1892, under which the city could have had an ascertainment of the benefits accruing to the abutting properties by reason of the paving and a levy of an assessment therefor, and the city having failed to proceed under that act, but having levied an assessment under the act of May 23, 1889, for the entire expense of the paving without regard to the amount of benefits accruing to abutting property, the defendant is not estopped by reason of the petition in evidence, from defending against the illegal assessment in this case.  *Answer:* Refused, especially for the reason that at the time the contract was entered into, as well as prior to that the petition was presented that set the city in motion, the act of May 16, 1891, referred to in that point had not been passed.] [5]

[Under the law and the evidence in this case no recovery can be had by the plaintiff. *Answer:* Refused.] [6]

After verdicts given for the plaintiff defendants moved for judgment non obstante veredicto and the court, SIMONTON, P. J., filed the following opinion, directing judgments to be entered on the verdict in the case of Harrisburg v. Miller, said opinion being referred to in the opinion of the Superior Court, as sufficient ground on which to rest its decision:

This action was brought to enforce a municipal lien for paving and curbing in front of the property of defendants on Sixth street, in the city of Harrisburg. Paragraph ten of section 3 of article 5 of the Act of May 23, 1889, P. L. 279, authorizes cities of the third class, of which the city of Harrisburg is one, "to cause to be graded, paved or macadamized any public street, lane or alley, or part thereof, which is now or may hereafter be laid out and opened in any of the said cities, and have the same set with curbstone, and to provide for the payment of the cost and expenses of the same or any part thereof by the city, or by the owners of real estate bounding and abutting thereon, by an equal assessment on said property in proportion to the number of feet the same fronts on the street, lane or alley, or part thereof to be improved, or in case of grading only, to assess the cost thereof, when not paid by the city, upon the properties benefited according to benefits," and section 29 of the act provides that the assessment shall be made by the city engineer, after giving notice of the time and place when and where the assessment will be made to all the owners of property that may be affected thereby. In accordance with the powers thus conferred, the city councils passed an ordinance, providing for the paving and curbing of Fourth and Sixth streets (Sixth being a continuance of Fourth), and directing the city engineer to apportion the entire cost of paving all the properties fronting on both sides of said street in proportion to the number of feet each property fronts upon the said street, after giving ten days' notice of the time and place of making the assessment, as provided by the act.

A contract was entered into in accordance with the provisions of this act and ordinance, the work was done, the proper notice was given and the assessment was made by the city engineer,

and, on refusal of defendants to pay the sum assessed against their property, a lien was filed, and this action was brought to enforce it. On the trial a binding instruction was given to the jury to find for the plaintiff, subject to the reserved points which raise the question whether the act of assembly above referred to and the ordinance passed in accordance therewith are repugnant to the fourteenth amendment of the constitution of the United States, or to section 1 of article 9 of the constitution of the state of Pennsylvania, or both, " because there was no finding by any one of the amount of special benefit accruing to the abutting properties, and because the assessment was made solely for the cost and expense of the improvement and not on the basis of special benefits."

The act in accordance with which the ordinance was passed, the contract and assessment made, and the work done, authorizes the city to provide for the payment of the cost and expense of the same . . . . by an equal assessment on said property in proportion to the number of feet the same fronts on the street;" and it does not provide, nor does the ordinance, for a hearing or finding on the question whether the total benefits to all the properties abutting on the street is equal to the cost of the paving and curbing ; or in other words, whether the improvement is worth its cost to the properties abutting on the street.

Counsel for defendants contend that there must be an ascertainment by an actual appraisement of the total benefit before the assessment is made, and that the persons whose property is to be assessed must have notice and opportunity to contest the question of the total amount of benefit which will accrue to all properties assessed by the improvement.

If this proposition be sound the defendants are entitled to judgment, for it is conceded that neither the act nor the ordinance provides for any such notice or hearing.

We think, however, that it is not sound, and that it is advanced under a misapprehension of the principles on which taxation—including assessments for street improvements—is based, and a confusion of the undoubted right of the taxpayer or abutter to be heard on the question of the distribution of the tax upon the several properties with a supposed right to a hearing on the question of the gross amount of the tax to be levied. He undoubtedly has the right to notice and hearing

on the question of the distribution of the gross amount of the tax among the whole number of properties to affected, and this is provided for in the ordinance, which requires the city engineer to give notice to the owners of abutting properties of the time and place when and where he will make the assessment.

But this is entirely different from the supposed right of the abutting owner to be heard, before the council, in accordance with the authority conferred by the act, resolve that the work shall be done, and that the total cost shall be assessed according to the frontage upon the abutting properties.

If we do not misunderstand entirely, the authorities as well as the principles on which the right of taxation, including the levying of assessments, is based, the taxpayer has no right whatever to be heard, except as he is represented in the legislature and in councils, on the preliminary questions whether the tax or assessment shall be levied, and whether the benefit to the taxpayers on whose properties the tax is to be assessed will equal the gross amount of the tax.

In Spencer v. Merchant, 100 N. Y. 585, which, as affirmed on appeal by the United States Supreme Court (125 U. S. 345), is a leading case, the court of appeals of New York decided that the legislature has the power to determine the amount of a tax for a local improvement, and the property to be assessed therefor; and its action in these respects is conclusive; that an act of that nature was constitutional; that the landowners were not entitled to a hearing as to the aggregate to be collected as the legislature had determined this and its determination could not be reviewed or changed; and that the hearing on the question of apportionment of the tax was all to which they were entitled. Mr. Justice FINCH, delivering the opinion of the court, said: " The act of 1881 determines absolutely and conclusively the amount of tax to be assessed and upon which it is to be apportioned. Each of these things was within the power of the legislature, whose action cannot be reviewed in the courts, upon the ground that it acted unjustly or without appropriate and adequate reason, citing several cases. The legislature may commit the ascertainment of the sum to be raised, and of the benefited district, to commissioners, but is not bound to do so, and may settle both questions for itself; and when it does so, its action is necessarily conclusive and be-

yond review. . . . In so doing it necessarily determines two things, viz the amount to be realized, and the property specially benefited by the expenditure of that amount. The lands might have been benefited by the improvement, and to the legislative determination that they were, and to what amount or proportion of the cost, even if it may have been mistakenly unjust, is not open to our review. . . . The question of special benefit and the property to which it extends is of necessity a question of fact; and when the legislature determines it in a case within its general power, its decisions must of course be final. . . .

" These views furnish also an answer to the objection that the only hearing given to the landowner relates to the opportionment of the fixed amount among the lots assessed, and none is given as to the aggregate to be collected. No hearing would open the discretion of the legislature, or be of any avail to review or change it. A hearing is given by the act as to the apportionment among the landowners, which furnishes to them an opportunity to raise all pertinent and available questions, and dispute their liability, or its amount and extent. The precise wrong of which complaint is made appears to be that the landowners now assessed never had opportunity to be heard as to the original apportionment, and find themselves now practically bound by it as between their lots and those of the owners who paid. But that objection becomes a criticism upon the action of the legislature and the process by which it determined the amount to be raised and the property to be assessed. Unless by special permission, that is a hearing never granted in the process of taxation. The legislature determines expenditures and amounts to be raised for their payment, the whole discussion and all questions of prudence and propriety and justice being confided to its jurisdiction. It may err, but the courts cannot review its discretion. In this case, it kept within its power when it fixed, first, the amount to be raised to discharge the improvement debt incurred by its direction; and, second, when it designated the lots and property, which in its judgment, by reason of special benefits, should bear the burden; and having the power we cannot criticise the reasons or manner of its action. The landowners were given a hearing, and so there was no constitutional objection in that respect.

Nor was that hearing illusory. It opened to the landowner an opportunity to assail the constitutional validity of the act under which alone an apportionment could be made, and that objection failing, it opened the only other possible questions of the mode and amount of the apportionment itself."

The notice and opportunity for hearing given in the case now before us was precisely the same as that spoken of above. The landowner has the opportunity, which he is now taking, to assail the constitutional validity of the act and the resulting ordinance, and he had the opportunity before the city engineer to object to the amount of the apportionment.

Mr. Justice GRAY, delivering the opinion of the Supreme Court, affirming the decision of the New York court of appeals (125 U. S. 345), quoted at length the above extract, from the opinion by Judge FINCH, saying of it: "The substance of the former decisions, and the grounds of the judgment sought to be reviewed, can hardly be more compactly or forcibly stated than they have been by Judge FINCH in delivering the opinion of the court of appeals."

In the same opinion, Mr. Justice GRAY further says: "The legislature, in the exercise of its power of taxation, has the right to direct the whole or a part of the expense of a public improvement, such as the laying out, grading or repairing of a street, to be assessed upon the owners of lands benefited thereby; and the determination of the territorial district which should be taxed for a local improvement is within the province of legislative discretion." (Citing several cases.) "If the legislature provides for notice to and hearing of each proprietor, at some stage of the proceedings, upon the question what proportion of the tax shall be assessed upon his land, there is no taking of his property without due process of law."

And in Parsons v. District of Columbia, 170 U. S. 45, which decides that the enactment by congress that assessments levied for laying water mains in the District of Columbia should be at the rate of $1.25 per linear front-foot against all lots or land abutting upon the street, road or alley, in which a water main shall be laid, is conclusive alike of the necessity of the work and of its benefit as against abutting property, Mr. Justice SHIRAS, delivering the opinion of the court, quoted in full the extract from the opinion of Judge FINCH quoted by Mr.

GRAY in Spencer v. Merchant, supra, adding that it was quoted and its reasoning approved in Spencer v. Merchant.

Judge DILLON, in his learned work, 2 Dill. Mun. Corp. (4th ed.) sec. 752, says: "The courts are very generally agreed that the authority to require the property specially benefited to bear the expense of local improvements is a branch of the taxing power or included within it. Whether the expense of making such improvements shall be paid out of the general treasury or be assessed upon the abutting property or other property specially benefited, or alone upon the abutters, according to frontage or according to the area of their lots, is, according to the present weight of authority, considered to be a question of legislative expediency.

In Cooley on Taxation (2d ed.), p. 149, it is said: "When the nature of the case does not conclusively fix it, the power to determine what shall be the taxing district for any particular burden is purely a legislative power and not to be interfered with or controlled except as it may be limited or restrained by constitutional provisions. Reference to the cases cited in the margin will show that this is a principle which the courts assert with great unanimity and clearness. The judicial tribunals, it has justly been said, cannot interfere with the legislative discretion, however onerous it may be. . . . The legislature judges finally and conclusively upon all questions of policy, as it may also upon all questions of fact, which are involved in the determination of a taxing district." And, at page 661: "It is conceded that the legislative judgment that a certain district is or will be so far specially benefited by an improvement as to justify a special assessment is conclusive, and that its determination as to what shall be the basis of the assessment is equally conclusive. To invoke the intervention of a court against the results of its conclusion is to invoke the judicial authority to give its judgment controlling effect over that of the legislature in the matter of an apportionment of a tax, which by concession on all sides, is purely a matter of legislation. This is professedly inadmissible in any case where the legislative action is not manifestly colorable and arbitrary," citing several authorities.

The limit to the power of the legislature is reached only when the conditions are such that, as said by Chief Justice PAXSON in Allegheny City v. West. Pa. R. R. Co., 138 Pa.

375, "it must be conclusively presumed that the property could not be benefited by the improvement," while, as he adds, "as a general rule the property owner cannot defend on the ground that his property was not benefited by the improvement: Michener v. Philadelphia, 118 Pa. 535; Commonwealth v. Woods, 44 Pa. 113; Harrisburg v. McCormick, 129 Pa. 213." These cases, and the reasoning by which they are supported, on the one hand and Allegheny City v. Railroad Co., supra, on its facts, and the opinion of PAXSON, C. J., on the other hand, illustrate clearly the general rule, and its limits. See also Hammett v. Philadelphia, 65 Pa. 146, Washington Avenue, 69 Pa. 352, and Wistar v. Philadelphia, 80 Pa. 505.

In Michener v. Philadelphia, supra, Justice PAXSON, delivering the opinion of the court, said: "The plaintiff alleges, however, that his property is not benefited by the sewer. He may or may not be mistaken in this. We cannot say. But this is a species of taxation, and all taxation is presumed to be for the benefit, directly or indirectly, of the taxpayer or his property. Laid, as taxes are, under general laws, there will always be cases of apparent individual hardship. The childless man may claim that the taxes which he is compelled to pay for the education of the children of other persons confers no benefit upon him. The law does not so regard it. Education produces a higher degree of intelligence, the fruits of which are seen in increased good order and diminished crime. When a man comes to pay his general taxes he cannot be permitted to allege that he derives no benefit therefrom, and it would be intolerable if in every instance of special taxation the question of benefits could be thrown into the jury box."

And in Harrisburg v. McCormick, 129 Pa. 213, it was decided on the authority of Michener v. Philadelphia, supra, that when a municipal claim is filed for the cost of street improvements in the built-up portions of cities, assessed upon abutting property under the front-foot rule, it is no defense against the claim that the property is but a narrow strip along the street and not worth the amount of the assessment claimed.

It is settled that the constitutional provision requiring that "all taxes shall be uniform upon the same class of subjects within the territorial limits of the authority levying the tax," does not apply to assessments for the cost of local improvements, such as

paving and grading.   In Chester City v. Black, 132 Pa. 568, it is said, in the per curiam opinion : " The constitutionality of this kind of legislation is not open to objection.   Of the numerous cases upon this subject it is sufficient to refer to Huidekoper v. Meadville, 83 Pa. 156, where it was held that the Act of April 6, 1870, P. L. 967, which confers upon the city of Meadville the power of paving its streets and collecting the cost from the owners of adjoining property by filing lines for paving, is not in violation of section 1, article 9 of the constitution, providing for uniformity of taxation."   And as stated by Judge COOLEY, Taxation, page 627, " In California, where there are provisions in the constitution that all property in the state shall be taxed in proportion to its value, and that taxation shall be equal and uniform throughout the state, acts of legislature providing that the expense of street improvements shall be assessed on property fronting on the street, in proportion to its frontage, have invariably been held not to be in violation of the provisions regarding valuation, equality and uniformity."

Counsel for defendant have argued with great zeal and ability that the question before us is ruled by Norwood v. Baker, 172 U. S. 269, but after careful consideration of that case in the light of their argument, we are unable to concur in this view.

That was a case of the taking of private property for a public purpose under the power of eminent domain ; and the land of defendant was taken not only without making any compensation therefor, but she was required besides to pay the costs of the proceeding.

It was not a case where the legislature, either directly or by delegating the power to the municipality, fixed a taxing district, and directed the cost of a public improvement to be assessed upon the property within it ; the case was that the property of one person was taken by right of eminent domain, and it was assumed without assessment, that the benefit to her remaining property was more, by the cost of the proceeding, than the value of the part taken.

We do not know of any case, and we venture to say none can be found, deciding that when part of a tract of land is taken for public use by the right of eminent domain, it can be presumed without an actual assessment that the value of the rest of the tract from which the part is taken is increased to the

extent of the value of the part taken. Yet this is precisely what was done here. The value of the part taken was fixed at $2,000. The amount of benefit to the rest of the tract was not inquired into or considered by the jury. The village ordinance passed specially for this case then provided " that the cost and expenses of the condemnation of the property, including the compensation paid to the owner, the cost of the condemnation proceedings, the cost of advertising and all other costs, and the interest on bonds issued, if any, should be assessed per front-foot upon the property bounding and abutting upon that part of Ivanhoe avenue, as condemned and appropriated therefor ; " and this was accordingly done.

It is, therefore, manifest that there was never at any stage of the proceeding an assessment or appraisement of the amount of the benefit to the remaining part of the tract from which the land for the street was taken. It was either simply assumed in the ordinance that the benefit equaled the value of the land taken and the cost of the proceeding, or else the question of amount of benefit was entirely ignored. But as compensation must be made or secured when private property is taken for public use, it necessarily follows that when private property worth $2,000 is taken, the owner must be paid $2,000 either in enhanced value of the remainder of the tract, or in money, or in the aggregate of both. It is practically a bargain and sale of land, subject only to the qualification that the price is not fixed by the vendor but by the appraisers. When the price is fixed, however, it must be paid, and what the owner does not receive in enhanced value of her land she must get in money. It is a sale for $2,000, with the right in the purchaser, the village of Norwood, to have credit for benefit to the land to the extent of that benefit, but not for one dollar more. ' Hence, the amount of the credit cannot be presumed by the purchaser, but must be definitely ascertained.

It does not alter the case or affect the principle that the $2,000 were paid to the landowner and then reclaimed from her. This was a mere incident, not of the essence of the transaction, which would have been the same if the ordinance had provided that the $2,000 should be withheld and only the cost should be assessed.

Deciding this case in the circuit court, SAGE, District Judge,

said : " Granting for the sake of the argument that where property is appropriated for a street, the compensation to the owners and the expense of making the appropriation may be assessed upon the several owners, each bearing his proper share, quite a different question is presented when as here a municipality undertakes to appropriate to public use the real estate of a single owner for a public street, and then assess back upon her not only the compensation awarded for the entire street, but also all the expenses of the proceeding. If such a proceeding is not a taking for public use without compensation, I am at a loss to know what would constitute such a taking : " 74 Fed. Repr. 997.

Nor is the principle affected by the circumstance that it is by the exercise of the taxing power that the price paid to the owner for the land was sought to be reclaimed. The basis of the decision is that it was never determined what amount of credit the village was entitled to for benefits, so that it might be known how much money, if any, must be paid. This was necessary to complete the taking under the right of eminent domain—if any credit was to be taken for benefit—and it cannot be supplied by the attempt to reclaim all the money under the guise of taxation, in addition to the cost of the proceeding.

After a careful examination and consideration of the case of Norwood v. Baker, we cannot doubt that if it had originated in this state the decision would have been the same, for as we understand the principles on which it was decided, there is nothing in it that conflicts with our own cases. And we may add that not one of the multitude of our own cases that sustain the frontage rule of assessment decides that as counsel contend, " it must be ascertained (by some tribunal on notice and hearing) that the property affected will generally be benefited to the extent of the assessment." On the contrary, they all decide or imply that this is a legislative, and not a judicial question, and that in addition to his right to contest the constitutionality of the legislation on which the proceedings are based, the only notice and hearing to which the owner of abutting property is entitled is on the question of the apportionment of the total assessment upon the several properties.

The motion for judgment non obstante veredicto is overruled, and judgment is directed to be entered on the verdict on payment of the jury fee.

Exception to defendants.

In Harrisburg v. Miller and Hertzler verdict and judgment for plaintiff for $242.12.

In Harrisburg v. Funk verdict and judgment for plaintiff for $193.81.

In Harrisburg v. McPherran verdict and judgment for plaintiff for $391.68.    Defendants appealed.

*Errors assigned* among others were, in the case of Harrisburg v. McPherran, (1–6) refusal of defendant's points, referring the question of the constitutionality. of the clause of the Act of May 23, 1889, P. L. 277, paragraph 10 of section 3 of article 5, which authorizes cities of the third class to provide for payment of costs and expenses of paving streets by the owners of real estate bounding or abutting thereon by an equal assessment on city property in proportion to the number of feet the same fronts on the street.

This same question was raised by the assignments of error in the other cases of Harrisburg v. Miller and Hertzler and Harrisburg v. Funk.   In the cases of Harrisburg v. Funk and Harrisburg v. Miller and Hertzler, the assignments of error raise a second question as to whether under the evidence introduced and offered by defendants, the court was justified in declaring that the paving in those cases was not a repaving, and in giving binding instructions in favor of plaintiff.

*Wm. M. Hargest* and *Wm. H. Middleton*, with them *Thomas S. Hargest*, *Lyman D. Gilbert* and *Wolfe & Bailey*, for appellants.—The questions common to all of these cases are:

1. Whether the act of assembly and ordinance directing the improvement assessed for, are in conflict with article 1, section 9 of the constitution of Pennsylvania, known as the declaration of rights, which provides that no citizen of this commonwealth "can be deprived of his life, liberty or property, unless by the judgment of his peers or the law of the land."

2. Whether they are in conflict with article 9, section 1 of the constitution of Pennsylvania, which provides that "all taxes shall be uniform upon the same class of subjects, within the territorial limits of the authority levying the tax, and shall be levied and collected under general laws."

3. Whether they offend against article 16, section 8 of the constitution of Pennsylvania.

The theory upon which the argument is based is, that there is an arbitrary assessment of the entire cost of the improvement without any finding or ascertainment that the property so assessed is benefited to the extent of the assessment and without providing at any stage of the proceedings an opportunity to the person assessed to contest the amount of the benefits, and that neither the act of assembly nor the ordinance having made such provision, the assessment and lien is a taking without "due process of law."

The principal authority in support of this proposition is Norwood v. Baker, 172 U. S. 269; 43 L. ed. 443.

This case of Norwood v. Baker was followed and applied to street paving assessments by the front-foot rule under a statute almost precisely like the act of 1889, in Fay v. Springfield, 94 Fed. Rep. 409: 2 Mun. Corp. Cases, 167.

The principles announced in Norwood v. Baker, have been repeatedly iterated and affirmed in many cases: State v. Newark, 37 N. J. L. 415; Rubber Co. v. Commissioners of Streets and Sewers, 38 N. J. L. 190.

A special assessment for an improvement made on the basis of frontage merely and without any regard to special benefits would be invalid: Walker v. Aurora (Ill.), cited in note to Raleigh v. Peace, 110 N. C. 32; 17 L. R. A. 330; Springfield v. Sale, 127 Ill. 359.

The same principle is exhaustively considered in Weed v. Boston (Mass.), decided September 16, 1898, 42 L. R. A. 642, 645. See also Asberry v. Roanoke, 91 Va. 562, s. c. 42 L. R. A. 636, and note.

A recent case in point is Detroit v. Chapin, 112 Mich. 588; 42 L. R. A. 638: Reclamation District v. Phillips, 108 Cal. 306; Improvement Co. v. Reynolds (Cal.), 1 Mun. Cor. Cases, 226, and note; Hutcheson v. Storrie, 51 S. W. Repr. (Tex.) 848.

*D. L. Seitz*, city solicitor, and *C. H. Bergner*, for appellee.— The relation practically of debtor and creditor has arisen between the city and McPherran which cannot be swept away even though the law under which the work was authorized to be done in the way it was done should be declared unconstitu-

tional: Scranton v. Jermyn, 156 Pa. 110; Harrisburg v. Baptist, 156 Pa. 526.

Assessments according to the front-foot rule on a public street in cities and large towns to pay for its opening, grading and paving can be justified, because it arrives, as nearly as human judgment can ordinarily reach, at a reasonable and just apportionment of the benefits on abutting properties : Seely v. Pittsburg, 82 Pa. 365; Hammett v. Philadelphia, 65 Pa. 146; Washington Avenue, 69 Pa. 352; Schenley v. Allegheny, 25 Pa. 128; McKeesport v. Soles, 165 Pa. 628.  Thus the Supreme Court of Pennsylvania has conclusively settled the applicability of the front-foot method of assessing abutting property in cities for street improvements.

Upon any question whatever before the Superior Court the decision of the Supreme Court will be followed as a binding authority : Act of June 24, 1895, P. L. 212, 220.

Appellants' whole case is based upon that of Norwood v. Baker, 172 U. S. 269.  If it be made to appear that that case does not decide what appellants contend it does, there is an end of the cases under review, so far as the constitutional questions are concerned.

The Norwood case relates solely to opening Ivanhoe avenue through Mrs. Baker's land by taking her private property.

We can scarcely conceive of any case, except one like that reported in Norwood v. Baker, supra, where this provision would not work exact justice to all.  But as it seems impossible to frame a general rule to which an exception may not be found, so to this general rule appears the exception in the Norwood case.

OPINION BY RICE, P. J., July 26, 1900 :

This appeal raises but a single question, namely, the constitutionality of the clause of the Act of May 23, 1889, P. L. 277 (paragraph 10 of section 3 of article 5, p. 288), which authorizes cities of the third class to provide for the payment of the cost and expense of paving city streets, " by the owners of real estate bounding and abutting thereon, by an equal assessment on said property in proportion to the number of feet the same fronts on the street."  The case is not complicated by any question as to the character of the property, as, for example,

that it is not urban, but rural; nor by any question as to its liability to special assessment, as, for example, that it does not abut on the improvement, or that this was a repaving; nor by any question as to the regularity of the proceedings. The defendant's contention, broadly stated, is that the legislature has not power to direct or to authorize the assessment of the entire cost of any local improvement whatever upon the abutting properties and to apportion the same according to the "front-foot" rule, unless the fact that the special benefits to the properties are equal to the cost of the improvement be first judicially ascertained by some competent tribunal, after due notice to the property owners, and an opportunity to be heard upon that question. He contends that, as neither the act, nor the ordinance, provided for such a hearing, both are in conflict with the provisions of our state constitution, and of the fourteenth amendment of the United States constitution, forbidding deprivation of property, without due process of law, and the taking of private property for public use without compensation. This, it seems to us, is claiming more for the decision of the United States Supreme Court in Norwood v. Baker, 172 U. S. 269, 43 L. ed. 443, than was actually decided. It is undisputed that the legislature may, in the exercise of the power of taxation, authorize municipal corporations to assess the cost of such improvement upon abutting properties, but their power is not without limitations. It has been held repeatedly by our Supreme Court that such assessments are sustainable only on the basis of special benefit, and the limit of the benefit is the limit of the taxing power. When this limit is exceeded, the assessment is not taxation, but confiscation, and, in many instances, such assessments have been declared invalid because this principle was violated. At the same time the court has uniformly held that the system is not, per se, a violation of any constitutional provision, as, for example, when it is applied to the laying of a sewer, or to the original paving of a street, in the built-up portion of a city or large town. This is so, not because the legislature has unlimited power absolutely and conclusively to determine what properties are specially benefited by an improvement of that kind, but because such an improvement in such circumstances is manifestly a special benefit to the abutting properties. But when the property manifestly could not be peculiarly benefited, the

courts of our state have not hesitated to declare that the assessment could not be sustained.    The front-foot rule of assessment does not express a principle of taxation, but merely a convenient method, as was said in Witman v. Reading, 169 Pa. 375, the application of which by the legislature to such conditions as we have suggested has been sustained by the courts of this state, not upon the ground that it is a matter of legislative discretion purely, but because, as a practical adjustment of proportional benefits, it is under such circumstances a reasonably certain mode of arriving at a true result: Washington Avenue, 69 Pa. 352.    " Perhaps no fairer rule can be adopted than the proportion of the feet front, although there must be some inequalities if the lots differ in situation and depth.    Appraising their market values, and fixing the proportions according to these, is a plan open to favoritism or corruption, and other objections.    No system of taxation which the wit of man ever devised has been found perfectly equal : " SHARSWOOD, J., in Hammett v. Philadelphia, 65 Pa. 146.    On the other hand, Mr. Justice MITCHELL, in rendering the opinion of the court in Witman v. Reading, supra, whilst not questioning the authority of the legislature to adopt the front-foot rule in such cases as we have mentioned, said : " In my own view the best, if not the only entirely just plan would be as was done in the earlier cases, to assess the benefit in each instance by the difference in market value of the property before and after the improvement."    In Washington Avenue, supra, Chief Justice AGNEW said of the front-foot rule : " Whatever doubt might have been originally entertained of it as a substitute, which it really is, for actual assessment by jurors or assessors under oath, it has been so often sanctioned by decision, it would ill become us now to unsettle its foundation by disputing its principle."

The question is, whether the adoption of this mode of assessment is, under all circumstances, a violation of the general principle governing such special assessments that the limit of the benefit is the limit of the taxing power; that is, whether it is essentially an assessment irrespective of benefits conferred? But for the recent decision of the United States Supreme Court, in Norwood v. Baker, supra, we would not be at liberty to regard this as an open question in Pennsylvania.    If, however, it was decided in that case that an act of a state legislature which au-

thorizes the assessment of the entire cost of a local improvement upon the abutting properties, and the apportionment of the charge by the front-foot rule is a violation of the provisions of the federal constitution forbidding the taking of private property for public use without compensation, and the deprivation of property without due process of law, we are bound by it, even though up to the time of the rendition of that decision the courts of our state held differently.

It will be well, therefore, to look first at the facts of that case, second at the precise question for decision, as stated by the Supreme Court itself, third at the ground upon which the decision was based.

Briefly, the facts were, that the village appropriated a part of Mrs. Baker's land for a public highway; that in condemnation proceedings prescribed by the laws of the state of Ohio where the case arose, the value of the land taken, without deduction for benefits to the remainder of the tract, was ascertained and awarded to her, and that subsequently this sum, together with the costs and expenses of the condemnation proceedings, was assessed by ordinance against her remaining land abutting on the new street. This was done under a law which authorized the village to place the cost and expense attending the condemnation of land for a public street on the general tax list of the corporation, or to assess the same " on the abutting and such adjacent and contiguous or other benefited lots and lands in the corporation, either in proportion to the benefits which may result from the improvement, or according to the value of the property assessed, or by the front-foot of the property bounding and abutting upon the improvement, " and providing that in the case of the opening, etc., of a street," the cost and expense " shall be assessed only on the lots bounding and abutting on such part or parts of said street or avenue so improved, and shall include such lots and lands only to a fair average depth of lots in the neighborhood."

The particular question presented for consideration, said Mr. Justice HARLAN, " involves the validity of an ordinance of that village, assessing upon the appellee's land abutting on each side of the new street an amount covering, not simply a sum equal to that paid for the land taken for the street, but, in addition, the costs and expenses connected with the condemnation pro-

ceedings." This was the precise question for decision as stated by the court, and it is plain to be seen, when looked at in the light of the facts of the case, that it was not necessarily as broad a question as that presented here. That is to say, the case might have been decided in precisely the same way it was decided without invoking or establishing a principle that would control the decision of the present case. As the learned president judge of the court below well says : " We do not know of any case, and we venture to say none can be found, deciding that when part of a tract of land is taken for public use by the right of eminent domain, it can be presumed without an actual assessment that the value of the rest of the tract from which the part is taken is increased to the extent of the value of the part taken. Yet this is precisely what was done here." If we had nothing to guide us but the facts of that case and the judgment, we would have no hesitation in saying that the decision would not control in a case like the present.

But the court took pains, after a thorough and exhaustive consideration of the principles governing special assessments for local improvements, to state the grounds of its decision of the particular case in the following explicit language : " The judgment of the circuit court must be affirmed, upon the ground that the assessment against the plaintiff's abutting property was under a rule which excluded any inquiry as to special benefits, and the necessary operation of which was, to the extent of the cost of opening the street in question over any special benefits accruing to the abutting property therefrom, to take private property for public use without compensation." On a hasty reading it might seem that the court meant that the front-foot rule whenever and wherever applied is necessarily a rule or mode of assessment which excludes from consideration special benefits to the properties assessed. We do not so interpret the decision. On the contrary, we think it is apparent from the opinion, that the thing condemned was the arbitrary assessment of the whole cost of an improvement upon abutting properties, whether such properties are specially benefited or not to the extent of the cost, and without regard to that consideration. And we may remark in passing, that this was no more emphatically condemned than it has been by our own Supreme Court. Great prominence was given to the terms of the Ohio statute, which seemed to

give to the municipal authorities an election to assess the cost of the improvement " either in proportion to the benefits which may result from the improvement, or according to the value of the property assessed, or by the front-foot of the property bounding and abutting upon the improvement." Justice HAR-LAN took pains to underscore the words "either" and "or" for the obvious purpose of showing that authority was given to assess the cost of the improvement upon the abutting properties, either in the proportion of special benefits or irrespective of them. " It thus appears," he says, that the statute authorizes a special assessment upon the bounding and abutting property by the front-foot for the entire cost and expense of the improvement without taking special benefits into account. And that was the method pursued by the village of Norwood. The corporation manifestly proceeded upon the theory that the abutting property could be made to bear the whole cost of the improvement, whether such property was benefited or not to the extent of such cost." In proceeding upon that theory they have the warrant, apparently, of the statute. The same thought is expressed in another part of the opinion : thus : " As the pleadings show, the village proceeded upon the theory, justified by the words of the statute, that the entire cost incurred in opening the street, including the value of the property appropriated, could, when the assessment was by the front-foot, be put upon the abutting property, irrespective of special benefit." But our statute gives the municipal authorities no discretionary power to choose between an assessment in proportion to special benefits and an assessment irrespective of benefits. As interpreted by our decisions, it authorizes an assessment according to the front-foot rule only where the special benefits to the properties assessed equal the amount of the assessment, and when from the nature of the case it is a reasonably certain mode of arriving at the true result in the apportionment. There is no authority given to apply that rule irrespective of the benefits. If it appeared here, as it did in the Norwood case, that the municipal authorities proceeded on the theory that they had arbitrary power to assess the cost of the paving upon the abutting properties, whether they were benefited or not to the extent of the cost, we would have no hesitation in saying that the presumption in favor of the validity of the ordinance would be destroyed. But as

we have shown, our statute, as interpreted by our decisions, gives no such authority, and there is not an intimation in the evidence nòr any presumption that the municipal authorities did in fact proceed on that theory, nor is there any evidence that the pavement as ordained was not a special benefit to the abutting properties to the extent of the cost, or that there were special circumstances which made the front-foot rule an unfair mode of apportioning the cost. There was, it is true, an allegation that the contract of the paving company had not been fully complied with, but that question was submitted to the jury and decided against the defendant. We must, therefore, assume that the pavement as ordained was laid.

It so happens in the present case that the defendant was one of the petitioners for the improvement. He must be presumed to have known that if a majority petitioned, the statute gave the councils authority, if the circumstances warranted it, to assess the cost on the abutting properties. But so far as appears in this record, neither he nor any of the property owners raised any objection to the proceedings until after the improvement had been made and they were called upon to pay their assessments. It is not necessary to hold that they are estopped in order to sustain this judgment. Nor do we put our decision upon that ground. We refer to these facts simply for the purpose of showing that under our law the property owners have ample notice of the proceedings, and that they were not conducted in the present instance in an arbitrary or underhanded manner.

After a careful study of the case of Norwood v. Baker, and of the cases cited by Mr. Justice HARLAN in support of the judgment (many of which distinctly recognize the power of the legislature to adopt this mode of assessment under special circumstances, as, for example, when it is applied to the original paving of a street of uniform width in the built up portions of a city or large town), we are not convinced that it establishes a general rule which controls in the present case. See further, Sears v. Boston, 173 Mass. 71, 350; Gleason v. Waukesha, 103 Wis. 225; Hayes v. St. Louis, not officially reported. In arriving at this conclusion, we have not overlooked the cases cited by the appellant's counsel in which a different opinion has been expressed as to the principles decided in that case. These are

Hutcheson v. Storrie (Texas), 45 L. R. A. 289; Loeb v. Co-lumbia Township, 91 Fed. Repr. 37; Lyon v. Town of Tona-wanda, U. S. Circuit Court, N. D. of New York, not officially reported; Cowley v. Spokane, 99 Fed. Repr. 840; Norfolk v. Young, Va. 47 L. R. A. 574.

We might well have rested our decision on the able opinion of the learned president of the court below in Harrisburg v. Miller, ante, p. 476, in which Norwood v. Baker, is thoroughly reviewed. But the importance of the question, involving, as it does, legislation, the validity of which has been recognized by our Supreme Court in a multitude of cases, seemed to justify further discussion, even though it involved repetition of much that is contained in his opinion. For the reasons there given in connection with the suggestions we have added the judgment is affirmed.